IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) INDICTMENT |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:20 CR 478 |
| | ) Title 18, United States Code, |
| RAYMOND A. ERKER, | ) Sections 152(2), 1341, 1343, |
| KEVIN M. KRANTZ, | ) 1349, and 2 |
| TARA M. BRUNST, | ) |
| | ) |
| Defendants. | ) |

JUDGE POLSTER

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

**I.    Defendants and Other Entities**

1.    Defendant RAYMOND A. ERKER resided in Cuyahoga County and Lorain County, Ohio, in the Northern District of Ohio, Eastern Division. ERKER was an investment adviser representative licensed in Ohio since March 10, 2003, and had a business office in Westlake, Ohio.

2.    ERKER was the owner and operator of multiple investment and asset management companies that were limited liability companies or corporations, including Sageguard, LLC; Sageguard Consulting, LLC; Sageguard Sourcing, LLC; Sageguard Technology, LLC; Sageguard Venture, LLC; Sageguard Solutions, LLC; and Sageguard Wealth Management, Inc., formerly known as Raymond A. Erker, Inc., ("the Sageguard Entities"); GenSource Financial Assurance Company LLC, ("GenSource"), and Provident Securities LLC ("Provident").

3.    On or about October 14, 2003, ERKER formed the Sageguard Entities in Ohio.

4. ERKER held a bank account at U.S. Bank, NA, ending in x9438 ("personal bank account").

5. On or about September 18, 2012, ERKER formed GenSource as a limited liability company in Delaware.

6. GenSource held a bank account at U.S. Bank, NA, ending in x2146 ("business bank account"). ERKER was an authorized signor for the business bank account. KRANTZ was also an authorized signor for the business bank account

7. On or about January 6, 2015, ERKER formed Provident as a limited liability company in Delaware and registered in Ohio.

8. Defendant KEVIN M. KRANTZ resided in Cuyahoga County and was a certified public accountant licensed in Ohio. KRANTZ was the chief financial officer for the Sageguard Entites and owned an interest in the Sageguard Entities since July 1, 2016. KRANTZ had a business office with ERKER in Westlake, Ohio.

9. Defendant TARA M. BRUNST resided in Cuyahoga County and was an investment adviser representative licensed in Ohio since on or about May 5, 2014. BRUNST was employed as an investment adviser representative at a Sageguard Entity since on or about July 20, 2015, and owned in interest in GenSource with ERKER. Brunst had a business office with ERKER in Westlake, Ohio.

10. Investor 1, Investor 2, Investor 3, Investor 4, and Investor 5 ("the Investors") were real people, known to the Grand Jury, who resided in the Northern District of Ohio, Eastern Division, and invested money with ERKER, KRANTZ, and BRUNST.

<u>COUNT 1</u>
(Conspiracy to Commit Mail Fraud and Wire Fraud, 18 U.S.C. § 1349)

The Grand Jury charges:

11. The factual allegations contained in Paragraphs 1 through 10 are re-alleged and incorporated as though fully set forth herein.

12. From in or around January 2013 through in or around July 2018, the exact dates being unknown to the Grand Jury, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants RAYMOND A. ERKER, KEVIN M. KRANTZ, and TARA M. BRUNST, did knowingly and intentionally combine, conspire, confederate and agree with each other, and with others both known and unknown to the Grand Jury, to commit federal offenses, that is, to devise and intend to devise a scheme and artifice to defraud the Investors, and to obtain money and property from the Investors by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute the scheme and artifice to defraud:

    a. placed, and caused to be placed, in any depository for mail matter, any matter and thing to be sent and delivered by the Postal Service, and took and received from the Postal Service, any such matter and thing delivered by the Postal Service, in violation of Title 18, United States Code, Section 1341 (Mail Fraud); and

    b. caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343 (Wire Fraud).

<u>OBJECTS OF THE CONSPIRACY</u>

13. The objects of the conspiracy were to: (1) induce the Investors to invest money; (2) use false and fraudulent pretenses to defraud the Investors; (3) prevent detection of the

3

conspiracy; and (4) enrich the conspirators and others.

## MANNER AND MEANS OF THE CONSPIRACY

14. It was part of the conspiracy that:

    a. Defendants offered and sold investments in GenSource and Provident to at least 54 individual investors and obtained approximately $9,366,976.37 from their scheme.

    b. Defendants made false and fraudulent statements to convince the Investors to invest money into GenSource and Provident, including, but not limited to, the following:

        i. That they were purchasing annuities and senior secured notes in GenSource and Provident with no exposure to risk of loss and with guaranteed rates of return, when in fact, neither Gensource nor Provident were authorized to issue annuities, the notes issued by Provident were not secured by any real or personal assets, and the investor funds were misappropriated or invested in high-risk "start-up" companies, contrary to the business model needed to make required interest and principal payments to the Investors.

        ii. That the proceeds of the Investors funds would be used for safe and reliable investments which would provide guaranteed and increasing lifetime income payments, when in fact, Defendants diverted the Investors' funds to the Sageguard Entities, ERKER's personal bank account, and to pay prior investors.

4

  c. Defendants failed to disclose to the Investors their ownership interests in GenSource and Provident.

  d. Defendants operated their investment program as a "Ponzi scheme" by diverting new investors funds to payments due to old investors and falsely representing to Investors that the money comprising these alleged payments reflected bona fide returns or interest on investments, when in actuality, Defendants knew that the funds used to make these purported payments had not come from profits of bona fide investments, but rather from the Defendants misappropriation of money from other investors.

  e. In an effort to make the investment operation appear legitimate, Defendants set up office fronts in Delaware and Nevada, contracted with call centers, and created false brochures, websites, and account statements, purporting to show investors' account balances, to prevent detection of the conspiracy.

  f. Defendants communicated their misrepresentations about the scheme to the Investors through various means, including in-person meetings, phone calls, mailings, and interstate wire communications in the form of emails.

  g. Defendants directed mailings from the business office in Westlake, Ohio, through the United States Postal Service, to the office fronts in Delaware and Nevada to deceive the Investors as to the origins of the mailings from ERKER's business office in Ohio.

  h. BRUNST solicited at least 10 individuals to invest at least $1,200,000 in Gensource and Provident, failing to disclose: (i) that Gensource was not issuing annuities; (ii) that Provident was not issuing secured notes; (iii) ERKER's ownership of Gensource and Provident; (iv) and BRUNST's ownership interest in Gensource.

5

      i.      KRANTZ caused interstate wires and transfers of investor funds from the business bank account to the Sageguard entities, ERKER's personal bank account, and to pay prior investors.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

15. In furtherance of the conspiracy and to achieve its objectives, one or more members of the conspiracy committed the following acts in furtherance, among others, in the Northern District of Ohio, Eastern Division, and elsewhere:

**II.  Investor 1**

16. On or about February 11, 2015, Defendants caused Investor 1 to invest $152,149.62 in GenSource. Investor 1 made this investment in the form of a personal check, which Defendants caused to be deposited into the business bank account. The balance in the business bank account was $143.70 before Investor 1's payment.

17. On or about February 13, 2015, Defendants, using funds from Investor 1, caused a check to be issued from the business account to a previous investor in the amount of $120,000, and caused $22,000 to be transferred from Gensource to a Sageguard Entity.

**III.  Investor 2**

18. On or about January 4, 2018, Defendants caused Investor 2 to invest $107,636.89 in GenSource. Investor 2 made this investment through two checks deposited in the business bank account. The balance in the business account was $6,299.02 before Investor 2's funds were deposited.

19. On or about January 5, 2018, Defendants, using funds from Investor 2, caused a transfer of $40,000 from the U.S. Bank account to ERKER's personal bank account.

20. On or about January 8, 2018, ERKER made a cash withdrawal of $12,007 from ERKER's personal bank account.

21. On or about January 10, 2018, ERKER made a cash withdrawal of $20,700 from ERKER's personal bank account.

22. On or about January 12, 2018, Defendants, using funds from Investor 2, caused a transfer of $10,000 from the U.S. Bank account to ERKER's personal bank account.

## IV. Investor 3

23. On or about April 16, 2018, Defendants caused Investor 3 to invest $60,000 in GenSource. Investor 3 made this investment through two checks deposited in the business bank account. The balance in the business account was $539.69 before Investor 3's funds were deposited.

24. On or about April 18, 2018, Defendants caused Investor 3 to invest $43,249.59 in GenSource. Investor 3 made this investment through a wire transfer from Investor 3's bank account to the business bank account.

25. On or about April 23, 2018, Defendants caused Investor 3 to invest $14,994.85 in GenSource. Investor 3 made this investment through a wire transfer from Investor 3's bank account to the business bank account.

26. On or about April 19, 2018, Defendants, using funds from Investor 3, caused a transfer of $2,000 from the business bank account to ERKER's personal bank account.

27. On or about April 23, 2018, Defendants, using funds from Investor 3, caused a transfer of $3,000 from the business bank account to ERKER's personal bank account.

28. On or about April 25, 2018, Defendants, using funds from Investor 3, caused a transfer of $7,000 from the business bank account to ERKER's personal bank account.

29. On or about April 30, 2018, Defendants, using funds from Investor 3's investment, caused a transfer of $2,000 from the business bank account to ERKER's personal bank account.

30. On or about April 30, 2018, Defendants, using funds from Investor 3's investment, caused a transfer of $3,000 from the business bank account to ERKER's personal bank account.

31. On or about May 10, 2018, Defendants, using funds from Investor 3's investment, caused a transfer of $1,000 from the business bank account to ERKER's personal bank account.

32. On or about May 11, 2018, Defendants, using funds from Investor 3's investment, caused a transfer of $1,000 from the business bank account to ERKER's personal bank account.

33. On or about May 14, 2018, Defendants, using funds from Investor 3's investment, caused a transfer of $6,000 from the business bank account to ERKER's personal bank account.

## V. Investor 4

34. On or about May 9, 2018, Defendants caused Investor 4 to invest $23,000 in GenSource. Investor 4 made this investment in the form of a personal check, which Defendants caused to be deposited into the business bank account. The balance in the business account was $10,605.00 before Investor 4's funds were deposited.

35. On or about May 18, 2018, Defendants, using funds from Investor 4's investment, caused a transfer of $2,000 from the business bank account to ERKER's personal bank account.

36. On or about May 23, 2018, Defendants, using funds from Investor 4's investment, caused a transfer of $1,000 from the business bank account to ERKER's personal bank account.

## VI. Investor 5

37. On or about March 25, 2016, Defendants caused Investor 5 to invest $193,640.78 in GenSource. Investor 4 made this investment in the form of a personal check, which

Defendants caused to be deposited into the business bank account. The balance in the business account was $29.76 before Investor 5's funds were deposited.

38. On or about March 28, 2016, Defendants, using funds from Investor 5's investment, caused transfers of $30,000 from the business bank account to the Sageguard entities.

39. On or about April 1, 2016, Defendants, using funds from Investor 5's investment, caused a transfer of $20,000 from the business bank account to the Sageguard entities.

40. On or about April 6, 2016, Defendants, using funds from Investor 5's investment, caused a wire of $39,000 from the business bank account to the Sageguard entities.

41. On or about April 8, 2016, Defendants, using funds from Investor 5's investment, caused a transfer of $4,000 from the business bank account to the Sageguard entities.

42. On or about April 15, 2016, Defendants, using funds from Investor 5's investment, caused a transfer of $2,000 from the business bank account to the Sageguard entities.

43. On or about April 18, 2016, Defendants, using funds from Investor 5's investment, caused a transfer of $2,000 from the business bank account to the Sageguard Entities.

44. As a result of the foregoing scheme, the Investors in Gensource and Provident suffered a loss of approximately $8,764,149.84 and $602,826.53, respectively.

All in violation of Title 18, United States Code, Section 1349.

COUNT 2
(Mail Fraud, 18 U.S.C. §§ 1341 and 2)

The Grand Jury further charges:

45. The factual allegations contained in Paragraphs 1 through 10 and 13 through 44 are re-alleged and incorporated as though fully set forth herein.

46. From in or around January 2013 through in or around March 2018, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants RAYMOND A. ERKER, KEVIN M. KRANTZ, and TARA M. BRUNST devised and intended to devise a scheme and artifice to defraud the Investors and to obtain money by materially false and fraudulent pretenses, representations, and promises.

47. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants, having devised and intended to devise any scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, placed, and caused to be placed, in any depository for mail matter, any matter and thing to be sent and delivered by the Postal Service, and took and received from the Postal Service, any such matter and thing delivered by the Postal Service, including the following mailing, representing a separate count of this Indictment:

| Count | Date | Description of Mailing | Method | Sender/Location | Recipient/Location |
|---|---|---|---|---|---|
| 2 | 1/2/2018 | GenSource Account Statement | U.S.P.S. | Wilmington, Delaware | Lorain, Ohio |

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 3-5
### (Wire Fraud, 18 U.S.C. § 1343)

The Grand Jury further charges:

48. The factual allegations contained in Paragraphs 1 through 10 and 13 through 44 are re-alleged and incorporated as though fully set forth herein.

49. From in or around January 2013 through in or around March 2018, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants RAYMOND A. ERKER, KEVIN M. KRANTZ, and TARA M. BRUNST, knowingly devised, and intended to devise, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

50. On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants, for the purpose of executing and attempting to execute the foregoing scheme and artifice, transmitted and caused to be transmitted, writings, signs, signals, pictures, and sounds by means of wire and radio communication, in interstate commerce, to wit: email communications, as described below, each representing a separate count of this Indictment:

| Count | Date | Description of Wire | Transmittal Information |
|---|---|---|---|
| 3 | 7/18/2017 | Email from BRUNST to ERKER and KRANTZ about Department of Commerce. | Transmitted via email server located outside of Ohio |
| 4 | 4/18/2018 | $43,249.59 wire deposit in GenSource business bank account ending in x2146 at U.S. Bank, NA | Wired from broker-dealer located outside of Ohio |
| 5 | 4/23/2018 | $14,994.85 wire deposit in GenSource business bank account ending in x2146 at U.S. Bank, NA | Wired from broker-dealer located outside of Ohio |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 6-11
(Money Laundering, 18 U.S.C. § 1957)

51. The factual allegations contained in Paragraphs 1 through 10 and 13 through 44 are re-alleged and incorporated as though fully set forth herein.

52. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant RAYMOND A. ERKER did knowingly engage and attempt to engage in a monetary transaction, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the withdrawal of U.S. currency, such property having been derived from a specified unlawful activity, that is, Mail Fraud, in violation of 18 U.S.C. Section 1341, and Wire Fraud, in violation of 18 U.S.C. Section 1343, each monetary transaction representing a separate count of this Indictment:

| Count | Date | Monetary Transaction | Approximate Amount |
|---|---|---|---|
| 6 | 2/13/2015 | Withdrawal from GenSource business bank account ending in x2146 at U.S. Bank, NA | $17,000 |
| 7 | 1/5/2018 | Withdrawal from GenSource business bank account ending in x2146 at U.S. Bank, NA | $25,145 |
| 8 | 1/5/2018 | Withdrawal from GenSource business bank account ending in x2146 at U.S. Bank, NA | $40,000 |
| 9 | 4/1/2018 | Withdrawal from GenSource business bank account ending in x2146 at U.S. Bank, NA | $20,000 |
| 10 | 4/30/2018 | Withdrawal from GenSource business bank account ending in x2146 at U.S. Bank, NA | $21,547.18 |
| 11 | 5/14/2018 | Withdrawal from GenSource business bank account ending in x2146 at U.S. Bank, NA | $14,482.09 |

All in violation of Title 18, United States Code, Section 1957.

## COUNT 12
(False Statement Under Oath, 18 U.S.C. § 152(2))

53. The factual allegations contained in Paragraphs 1 through 10 and 13 through 44 are re-alleged and incorporated as though fully set forth herein.

54. On or about the October 9, 2019, in the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, Defendant RAYMOND A. ERKER knowingly and fraudulently made a false material statement under oath in and in relation to a case under Title 7, In re: Raymond Adam Erker, Case No. 19-15448, by falsely testifying under oath in a proceeding before the case trustee at a Rule 341 hearing, a meeting of creditors, that he disclosed to the investors that he owned the companies the investors gave him money to invest in, when in fact, and as ERKER then knew, he did not disclose to the investors that he owned the companies the investors gave him money to invest in.

In violation of Title 18, United States Code, Section 152(2).

## FORFEITURE

The Grand Jury further charges:

55. For the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 982(a)(1)(A), 981(a)(1)(C), 982(a)(2)(A) and Title 28, United States Code, Section 2461(c), the allegations of Counts 1 through 11 are incorporated herein by reference. As a result of the foregoing offenses, Defendants RAYMOND A. ERKER, KEVIN M. KRANTZ, and TARA M. BRUNST shall forfeit to the United States all property, constituting or derived from proceeds traceable to the violations charged herein; all property constituting, or derived from proceeds obtained directly or indirectly as a result of the violations charged herein; and, all property, real or personal, involved in the violations charged herein; including, but not limited to,

a money judgment in the amount of the proceeds traceable to the violations charged in Counts 1 through 11.

## SUBSTITUTE ASSETS

If, as a result of any act or omission of Defendants, any property subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been comingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of Defendants up to the value of the forfeitable property described above.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.