## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | )  Case No. 1:20 CR 0478 |
| | ) |
| Plaintiff, | )  JUDGE DAN AARON POLSTER |
| | ) |
| v. | ) |
| | ) |
| RAYMOND ERKER, | )  **OPINION & ORDER** |
| | ) |
| Defendant. | ) |
| | ) |

### I.      Introduction

On August 13, 2025, Raymond Erker filed the instant 28 USCS § 2255 motion to vacate, set aside, or correct sentence.  ECF 206.  Erker's motion raises two grounds for relief: (1) Ineffective Assistance of Counsel for failing to challenge statements made without *Miranda* warnings; and (2) General Ineffective Assistance of Counsel for "failing to investigate the facts and the law of the case or take any of the other reasonable and necessary steps required to effectively prepare for trial."  The Government filed a brief in opposition (ECF Doc. 207) and Erker filed a reply.  ECF Doc. 210.  On December 29, 2025, Erker also filed a sur-reply related to the Government's exhibits.  ECF Doc. 216.  For the reasons explained below, the Court DENIES Erker's § 2255 petition.

### II.      Background

Defendant Erker perpetrated a massive fraud against victims who considered him a friend.  He told them that he was purchasing risk-proof annuities with their hard-earned retirement funds.  In fact, he never sold a single annuity, and he didn't even have a relationship with an insurance company or financial institution which authorized him to do so.  Erker took

1

millions of dollars of his family friends' money and invested it in highly speculative ventures. Despite it becoming clear that these ventures were unsuccessful, he continued to solicit and invest new clients' funds in these ventures year after year. Erker ran a Ponzi scheme, using new clients' funds to appear to make annuity payments to earlier clients, and he created false documents to conceal what he was doing.

On September 3, 2020, Erker was indicted for conspiracy to commit mail fraud and wire fraud under 18 U.S.C. § 1349; one count of mail fraud under 18 U.S.C. § 1341; three counts of wire fraud under 18 U.S.C. § 1343; and six counts of money laundering under 18 U.S.C. § 1957. He was also charged with making a false statement under oath under 18 U.S.C. § 152(2). ECF Doc. 1.

Following a jury trial in March 2022, Erker was found guilty of all charges. ECF Doc. 73. Before sentencing, Erker moved to discharge his attorney and his attorney, Edwin Vargas, also moved to withdraw. ECF Docs. 76 & 78. The Court appointed new counsel on March 23, 2022. In November 2022, Erker was sentenced to 262 months in prison and 3 years of supervised release. ECF Doc. 123. The Court ordered restitution in the amount of $7,974,452.60. Amended Judgment, ECF Doc. 129. Erker appealed, and the Sixth Circuit Court of Appeals affirmed the judgment against him on March 3, 2025, but remanded for consideration of his eligibility for a sentence reduction. ECF Doc. 194; *United States v. Erker*, 129 F.4th 966 (6th Cir. 2025). On March 24, 2025, the Court considered Erker's eligibility and declined to reduce his sentence. ECF Doc. 201. Defendant Erker, now acting *pro se,* filed his initial motion to vacate on May 9, 2025. ECF Doc. 203. His initial §2255 motion was struck because it exceeded the page limitations set by Local Rule. *See* ECF Doc. 204 and 5/27/2025 Non-Doc Order. Defendant Erker shortened his motion and re-filed it on August 13, 2025. ECF Doc. 206.

### III.    Timeliness

As a preliminary matter, Defendant Erker's motion is timely.  28 U.S.C. § 2255(f)(1) proscribes a one-year statute of limitations for filing a motion, counted from the date on which the judgment becomes final.  A conviction "becomes final upon conclusion of direct review." (*Raybon v. United States,* 867 F.3d 625, 629 (6th Cir. 2017) (citing *Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004)).  When a defendant pursues a direct appeal, but the conviction is affirmed, "the judgment of conviction becomes final after the ninety-day period to file a petition for writ of certiorari expires."  *Id.*  The court sentenced Erker on November 21, 2022.  ECF 123.  Erker's appeal was decided and filed on March 3, 2025.  *United States v. Erker*, 129 F.4th 966 (6th Cir. 2025).  Erker timely mailed his 2255 motion *pro se* on August 8, 2025, within one year of the Court of Appeals decision.  Thus, his § 2255 motion is timely.

### IV.    Legal Standards

#### A.  § 2255

Under 28 U.S.C. § 2255(a), a prisoner in custody under sentence of a district court may move the court that imposed the sentence to vacate the sentence on the grounds that it was "imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack."  In order to obtain relief under § 2255, a prisoner must demonstrate a constitutional error, a sentence that exceeds statutory limits, or an error of fact or law "so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A petitioner seeking to set aside his sentence pursuant to Section 2255 has the burden of "sustaining [his] contentions by a preponderance of the evidence."  *Pough,* 442 F.3d at 964.

Indeed, to "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).  "Once the defendant's chance to appeal has been waived or exhausted," the courts "are entitled to presume that [the defendant] stands fairly and finally convicted." *Id.* at 164.

### B.  Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner is required to demonstrate: 1) that counsel's performance was so deficient that counsel did not actually perform as counsel; and 2) that his defense was so prejudiced by counsel's conduct that it is reasonably probable that the outcome of the case would have been different but for the ineffective assistance.  *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).  Conclusory allegations that fail to articulate counsel's deficiencies or how they prejudiced the case are insufficient to sustain a claim of ineffective assistance of counsel on a § 2255 motion.  *Ushery v. United States*, No. 20-5292, 2020 U.S. App. LEXIS 21840, at *3–4 (6th Cir. July 14, 2020).

### V.    Analysis

### A.  Ground One – Ineffective Assistance of Counsel (McLaughlin Testimony)

Ground One of Erker's 2255 petition is a claim for ineffective assistance of counsel. ECF Doc. 206 at 2.  Erker argues that his trial counsel failed to object to the admission of recorded statements he made to his friend, Detective Tom McLaughlin, when McLaughlin visited Erker when he was in jail for an unrelated incident.  Erker argues that he was not advised of his *Miranda* rights prior to speaking to McLaughlin and that his trial attorney should have moved to suppress the statements made by Erker to McLaughlin.[1]

---

[1] Erker told McLaughlin that he had lost $200,000 given to him by McLauglin's father-in-law and that he was not going to be able to "make it right."  *See* Government Exhibit A at 10:34 to 10:40.  ECF Doc. 209.

Failure to file a suppression motion *may* be ineffective assistance, but it is not ineffective assistance *per se.  Kimmelman v. Morrison,* 477 U.S. 365, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986).  In order to meet his burden of proving ineffective assistance of counsel for not filing a motion to suppress, Erker must show that counsel's failure fell below the objective standard of reasonableness, and that his motion to suppress would have been granted.  *Id.* at 374-375.  Conversely, if the suppression motion would have failed, counsel may not be criticized for having accurately assessed his client's chances of prevailing on the motion.  *See Guadarrama v. United States,* 2016 U.S. Dist. LEXIS 81617 at *6, citing *Worthington v. United States*, 726 F.2d 1089, 1093 (6th Cir. 1984).  In other words, "whether trial counsel . . . acted incompetently . . . depends upon the merits of the . . . question."  *Id.*

Here, Erker argues that he was not advised of his *Miranda* rights when his friend, Detective Thomas McLaughlin, visited him in jail.  He further contends that his trial attorney should have moved to suppress his statements to McLaughlin.  However, such a motion to suppress would not have been meritorious because, as is further explained below, Erker was not "in custody" when he talked with his friend, McLaughlin.  Accordingly, his right to a Miranda warning was not triggered during this meeting, and his attorney was not ineffective for failing to move to suppress the statements Erker made to McLaughlin.

The Fifth Amendment requires law enforcement officers to advise a person of their so-called Miranda rights, including the right to remain silent, before interrogating them while they are "in custody." *See United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009); *Miranda*, 384 U.S. at 444-45.  In determining whether someone is "in custody" for purposes of Miranda, courts focus on "the objective circumstances of the interrogation" and "how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of

action." *Panak*, 552 F.3d at 465 (citation omitted). "The ultimate inquiry is whether, under the totality of the circumstances, the interviewee's freedom of movement was restrained to a degree associated with formal arrest." *United States v. Luck*, 852 F.3d 615, 621 (6th Cir. 2017) (citing Panak, 552 F.3d at 465). Four, non-exhaustive factors help guide this inquiry: "(1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions." *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010).

Here, McLaughlin did not "interrogate" Defendant Erker. ECF Doc. 150 at p. 137. While it is true that McLaughlin is a detective, he was not acting in that capacity when he visited Mr. Erker. *Id.* Nor was he working with the federal investigative agent or the assistant U.S. attorney during this meeting. Further, while it is true that Erker was in jail when he met with McLaughlin, his incarceration was unrelated to their meeting.[2] *See* ECF Doc. 160 at p. 30. Simply put, Erker was not forced to meet with McLaughlin. McLaughlin visited Erker in jail in order to bring college financial aid forms for Erker to sign on behalf of Erker's daughter. ECF Doc. 150 at p. 137. Erker had to know that anything he said in jail was likely to be recorded, and it was his choice to engage in discussion with McLaughlin regarding not being able to repay McLaughlin's father-in-law. Because McLaughlin was not acting as a law enforcement officer or under the direction of an officer investigating Erker for financial crimes, he was not obliged to warn Erker of his *Miranda* rights before they spoke. *See Peterson v. Douma*, 751 F.3d 524, 533 (7th Cir, May 6, 2014). A motion to suppress their conversation for lack of a *Miranda* warning

---

[2] Erker was in jail for menacing by stalking. He had placed GPS trackers on his ex-wife's vehicle without her permission. This fact was kept from the jury because it may have been prejudicial to Erker.

would have been denied. For this reason, Erker has failed to establish the first prong of *Strickland*—that his counsel's performance was ineffective in violation of the Sixth Amendment.

Moreover, even if McLaughlin's statements had been suppressed, the jury heard similar statements Erker made to another victim, Paulette Lilly. ECF Doc. 150 at 159-163. Erker has not argued that his attorney should have moved to suppress the conversation between him and Ms. Lilly, which was arguably more damaging. Ms. Lilly testified that she invested a significant amount of her savings, $260,000.00, with Erker. She testified that Erker lied to her about how her money would be invested. ECF Doc. 150 at 162. Later, Lilly met with Erker and recorded a conversation where he admitted that her money was gone. ECF Doc. 150 at 158. The jury heard parts of the audio recording from their meeting. *Id*. The Court warned Erker before trial that the recording from his meeting with Ms. Lilly would be very damaging to his defense. *See* ECF Doc. 160 at p. 4.

Erker's recorded statements to McLaughlin were only a small part of the overall trial evidence against him. The outcome of Erker's trial likely would have been the same even if counsel had successfully moved to suppress Erker's statements to Mr. McLaughlin. Accordingly, Erker has also failed to establish the second prong of *Strickland*—that the outcome of his trial would have been different. Because Erker has failed to show that his trial counsel was ineffective by failing to move to suppress Erker's statements to Mr. McLaughlin, Ground One of his §2255 petition lacks merit.

### B. Ground Two – Ineffective Assistance of Counsel (Inadequate Defense Efforts)

In Ground Two, Erker asserts several more ineffective assistance of counsel claims. He argues that his trial attorney failed to adequately review and analyze "copious amounts" of evidence. He argues that his attorney failed to investigate the discovery and procure additional

information related to several key witnesses.  He argues that his attorney failed to pursue an advice-of-counsel defense.  He contends his attorney should have called witnesses and gotten experts to evaluate the evidence.  He argues that the cumulative result of his attorney's ineffectiveness amounted to him not presenting any defense at trial and losing the case.  The Court will briefly address each of Erker's arguments below.

### 1. Reviewing and Analyzing Evidence

Erker argues that his attorney should have been more diligent in combing through the copious amounts of evidence.  He further argues that, if counsel had reviewed all the evidence, he would have been able to introduce annuity purchase documents signed by Erker's victims.  He contends that counsel's decision to forego doing so was incompetence.  The Court disagrees. Erker's counsel likely decided that questioning the victims about these documents would only draw more attention to them.

Erker attributes his counsel's failure to introduce his victim's agreements into evidence to counsel's failure to comb through all the evidence.  But he also describes this "failure" as a "decision" on counsel's part.  *See* ECF Doc. 206 at 3.  It cannot be both.  Counsel either knew about the agreements and strategically decided not to introduce them, or he didn't know about them because he failed to review the evidence.  Erker's own argument – that his counsel decided not to question the witnesses about the agreements - belies his assertion that counsel didn't fully review the evidence.  Strategic decisions by counsel are not usually ineffective assistance.  *See Lewis v. Alexander*, 11 F.3d 1349, 1353 (6th Cir. 1993); *Hughes v. United States,* 258 F.3d 453, 457 (6th Cir. 2001). There is no support for Erker's contention that his attorney did not review the copious evidence in this case.  And even if there was, Erker hasn't cited any resulting prejudice.  This ineffective assistance claim fails under both prongs of the *Strickland* test.

### 2. Reviewing Government Evidence and Introducing Documents at Trial

Similarly, Erker argues that his attorney's performance was ineffective because he failed to review documents produced by the Government and failed to introduce any documents at trial. Even if Erker's attorney failed to review every document produced by the Government, Erker hasn't explained how he was prejudiced by this failure. Erker claims that these documents contained "source records of investments, returns, repayment loans, and collateral – precisely the material needed to rebut a Ponzi narrative." ECF Doc. 210 at 4. But Erker hasn't explained *how* this evidence would have rebutted the Ponzi scheme. After all, this was the same evidence the Government used to prove the Ponzi scheme in the first place. If Erker can't explain now—after years of reflection—how this evidence would have proven his innocence, how could his attorney have proven it at trial? Defendant Erker has failed to show that his attorney did not properly review the Government's evidence or that this prejudiced his defense. This ineffective assistance claim fails under both prongs of the *Strickland* test.

### 3. Advice of Counsel Defense

Next, Erker argues that his counsel failed to pursue an advice-of-counsel defense. The record shows that Erker's counsel *did* consider raising this defense before trial. On February 18, 2022, the Government moved *in limine* to preclude this defense at trial. ECF Doc. 64. The Government's motion pointed out that, if Erker intended to use this defense, he would need to prove its elements, namely that:

> 1) before taking action, the defendant in good faith sought the advice of an attorney whom he or she considered competent to give advice on the matter;
> (2) the defendant consulted the attorney for the purpose of securing advice on the lawfulness of possible future conduct;
> (3) there was a full and accurate report to the attorney of all material facts that the defendant knew; and
> (4) the defendant acted strictly in accordance with the advice of the attorney.

9

Seventh Circuit Pattern Criminal Jury Instructions, 2020 Edition, Section 6.12.  As is further explained below, Erker could not make threshold showing of any of the elements of this defense.

On February 22, 2022, the Court heard argument from counsel and initially authorized Erker to raise an advice-of counsel defense.  *See* Feb 22, 2022 Transcript, ECF Doc. 160, and Feb. 23, 2022 Minutes of Proceedings.  However, a few days later, the Government moved for reconsideration of its motion *in limine*.  ECF Doc. 66.  The Government argued that the evidence Erker was intending to use to support his advice of counsel defense did not show that any counsel had advised him on the actions set forth in the Indictment.  *Id.*

The Court conducted another status conference on February 28, 2022 and warned Erker that it didn't seem that there was any support for his advice of counsel defense.  In fact, Attorney Laino (whom Erker had allegedly consulted) was prepared to testify that Erker had not sought legal advice from him and that Erker admitted to defrauding clients.  ECF Doc. 161.  After this hearing, the Court again denied the Government's motion *in limine* but advised Erker he would only be able to request an advice of counsel jury instruction if the evidence at trial supported this defense.[3]  *Id.* at p. 10.

Other than initially *claiming* that he had consulted counsel, Erker wasn't able to make a threshold showing that he was entitled to this defense.  The Court did allow Erker to testify that he sought legal advice regarding creating his limited partnership, GenSource.  See Transcript of Jury Trial, Volume 4, ECF Doc. 152 at 74-75.  However, at trial, Attorney Vargas made the strategic decision to avoid raising the advice of counsel defense because the evidence did not support it and Attorney Laino would have hurt Erker's case.  *See* February 28, 2022 Transcript,

---

[3] The Court also warned Attorney Vargas not to raise an advice of counsel defense in his opening argument or it would open the door to the Government calling Attorney Laino to testify against Erker at trial.  ECF Doc. 161 at 12.

ECF Doc. 161 and Transcript of Jury Trial, Volume 4, ECF Doc. 152 at 79.  Erker has failed to show that Attorney Vargas was ineffective in failing to raise an advice of counsel defense.  In point of fact, Erker might have had a meritorious ineffective assistance of counsel claim if Attorney Vargas *had* raised an advice of counsel defense in the face of what Attorney Laino was prepared to testify.

### 4.  29 Key Bank Accounts

Similar to his argument regarding reviewing the Government's evidence, Erker contends that his attorney didn't adequately review "29 key bank accounts."  He argues that they would have shown the "totality of the financial life of Erker's companies."  ECF Doc. 206 at 4.  But as with the other evidence, Erker hasn't explained *how* these 29 bank accounts would have established his innocence.  If Erker cannot explain this to the Court, it is hard to see how his attorney would have been able to explain it to the Jury.  Defendant Erker has failed to show that his attorney did not properly review the 29 key bank accounts or that this prejudiced his defense.  This ineffective assistance claim fails under both prongs of the *Strickland* test.

### 5.  Witnesses and Expert Opinions

Erker argues that his trial counsel was ineffective for failing to call witnesses and/or retain experts on his behalf.  He argues that witnesses would have provided exculpatory evidence, and experts would have been able to make sense of the voluminous financial records.  Erker's arguments regarding calling witnesses are vague and uncompelling.  He fails to identify any specific witnesses or what their "exculpatory" testimony would have been.  If he knew of helpful witnesses, his attorney undoubtedly would have called them to testify.

Erker argues that an expert witness would have been able to explain to the jury simple facts about private annuities, etc.  But he fails to explain how this would have aided his defense.

11

The undisputed fact was that Erker never had a relationship with a financial institution that authorized him to sell annuities.  If he cannot explain how this would have aided his defense, it is unclear why his attorney was ineffective for failing to call witnesses or retain experts.  Because Erker has failed to explain, with any specificity, how calling unidentified witnesses or hiring experts would have actually aided his defense, this ineffective assistance claim fails under both prongs of the *Strickland* test.

### 6.  Failed to Mount Any Defense

Finally, Erker argues that his counsel was ineffective because he didn't mount any defense for Erker at all.  Once again, Erker fails to identify what the defense would have been. He complains that counsel didn't call witnesses, but  he doesn't identify any helpful witnesses. He complains that he failed to present an affirmative defense, but he doesn't explain what affirmative defense was available.  Erker was entitled to competent counsel who investigated defenses of fact and law available to him.  But counsel was not required, or permitted, to make up his client's story or invent mitigating circumstances.  *See In re Grissom,* 85 Cal. App.3d 840, 848 (October 26, 1978).  Erker has failed to identify any witnesses or defenses that would have been helpful to him at trial.  Because he has failed to show that his counsel was ineffective, this final catch-all ineffective assistance claim fails.

### VI.    Conclusion

Because both grounds of Erker's §2255 petition lack merit, the Court DENIES Defendant Erker's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.

**IT IS SO ORDERED.**

Dated: January 5, 2026                                      *s/Dan Aaron Polster*
                                                                       United States District Judge